UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| DEREK LECROY, | |
| Plaintiff, | |
| v. | No. 1:21-CV-035-H |
| CANON U.S.A., INC., | |
| Defendant. | |

### MEMORANDUM OPINION AND ORDER

Derek LeCroy brings several claims against Canon U.S.A., Inc. related to the alleged non-payment of earned commissions. Before the Court is Canon's Motion for Judgment on the Pleadings. Dkt. No. 14. Canon argues that any claim related to LeCroy's alleged commission contract fails as a result of the integration clause in LeCroy's compensation contract. Thus, Canon asserts that LeCroy's breach-of-contract, fraud, promissory-estoppel, and quantum-meruit claims should be dismissed. In response, LeCroy contends that his contract claim is based on an entirely different agreement that was expressly intended to be handled outside of the compensation contract. After considering the motion, the parties' arguments, and the applicable law, the Court grants the motion in part and denies it in part. The Court grants Canon's motion with respect to the fraud claim because Texas law precludes such claims when they are premised on a contract dispute. But the Court denies the motion for the remaining three claims because Canon's motion seeks to resolve factual disputes regarding the contents and scope of the alleged agreement.

1.  **Factual Background[1] and Procedural History**

Canon U.S.A., Inc. is a provider of consumer, business-to-business, and industrial digital imaging solutions in the United States, Latin America, and the Caribbean Markets.[2] Derek LeCroy was employed by Canon from 2016 to 2020. During this time, he was responsible for Canon's business development west of the Mississippi River. Dkt. No. 6 at 13. During a conference call in 2016, Canon senior executives encouraged members of Canon's Business Information Solutions Group, including LeCroy, to spend more so the company could grow more. *Id.* LeCroy took action to develop his personal idea for company growth. *Id.*

LeCroy shared his vertical-growth plan with his supervisor. *Id.* This plan identified three business segments with a market specialist to be engaged by Canon and assigned LeCroy to manage each business segment and its respective contractor. *Id.* LeCroy's plan would compensate the three market specialists and LeCroy through a commission system.[3] *Id.* at 14.

In May 2016, LeCroy was invited to present his plan to his superiors, which he did through a PowerPoint presentation. *Id.* This presentation included every element of his proposed plan, including the commission system to pay both the market specialists and LeCroy. *Id.* In August 2016, the Senior Vice President of the Business Information

---

[1] These allegations are taken from LeCroy's complaint, which the Court must accept as true when resolving a motion for judgment on the pleadings. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).

[2] *Corporate Profile*, Canon, https://www.usa.canon.com/internet/portal/us/home/about/about-canon/corporate-profile (last visited Apr. 20, 2021).

[3] LeCroy contends that his commission was based on an increasing scale ranging from 1% to 10% dependent on company performance. Dkt. No. 6 at 14.

Solutions Group, on behalf of Canon, accepted the plan in writing, including LeCroy's commission-compensation scheme. *Id.* LeCroy's direct supervisor acknowledged LeCroy's proposed commission and explained to him in an email that his commission would be addressed outside of his ordinary salary structure. *Id.*

After receiving approval for his plan and securing the alleged commission-based contract, LeCroy began implementing the plan. *Id.* With Canon's permission, he engaged the three specialists identified in the plan and executed their contracts. *Id.* These contracts included verbatim terms and language from LeCroy's plan. *Id.* By the last quarter of 2016, the plan was in full effect, and LeCroy was managing the three market segments. *Id.* at 14–15. This plan was largely successful and increased new revenue in each market. *Id.* at 15.

In the first quarter of 2017, the three market specialists were paid their respective commissions outlined by LeCroy's plan, but LeCroy was not. *Id.* After Canon failed to pay LeCroy's commission under the plan, it demoted LeCroy by removing him from his managerial capacity over two of the market segments. *Id.*

In December 2020, LeCroy filed his original petition in the 104th District Court for Taylor County, Texas. Dkt. No. 6 at 11. Canon properly removed the case to this Court. Dkt. No. 6. Canon filed its current motion for judgment on the pleadings (Dkt. No. 14), which has been fully briefed and is ripe for review.

2.  **Legal Standard**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) provides a means to dispose of a case where the parties do not dispute the material facts "and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract v. Touchstone Props., Ltd.*, 914 F.2d 74, 76

(5th Cir. 1990). The standard for resolving a motion for judgment on the pleadings is the same as a motion to dismiss under Rule 12(b)(6). *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010).

When reviewing a Rule 12(b)(6) motion to dismiss, courts must "accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 306 (5th Cir. 2015) (quoting *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010)). "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (quoting *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal citations and quotations omitted)). A motion to dismiss pursuant to Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (internal citation omitted).

When a plaintiff's complaint fails to state a claim, a court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). District courts "often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr.*, 313 F.3d at 329; *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be

freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.") (internal citation omitted). However, a plaintiff should be denied leave to amend a complaint if the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face. 6 *Fed. Prac. & Proc. Civ.* § 1487 (3d ed. 2021).

3. Analysis

    A. **Canon's motion was timely.**

Rule 12(c) provides "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The pleadings are closed for the purposes of a Rule 12(c) motion "upon the filing of a complaint and an answer (absent a court-ordered reply), unless a counterclaim, crossclaim, or third-party claim is interposed." *Mundujano v. City of Pharr*, 786 F. App'x 434, 436 (5th Cir. 2019) (citing Fed. R. Civ. P. 7(a)) (holding that the pleadings were closed even though the plaintiff could still amend its complaint as of right when the motion was filed).

LeCroy contends that Canon's motion is premature because he was still entitled to amend his pleadings as a matter of course until June 4, 2021 pursuant to the Court's scheduling order. Dkt. No. 24 at 8. But this argument overlooks when pleadings are closed for the purposes of Rule 12(c). LeCroy filed his original petition in state court on December 29, 2020. Dkt. No. 6 at 11. Canon removed the case to this Court and subsequently filed its answer on February 19, 2021. Dkt Nos. 1, 8. Canon's answer did not include any counterclaims. *See* Dkt. No. 8. As a result, the Court finds that the pleadings were closed under Rule 12(c) on February 19, 2021. Canon did not file its motion for judgment on the

5

pleadings until March 4, 2021. Dkt. No. 14. Additionally, Canon filed its Rule 12(c) motion before the Court issued a scheduling order in this case.

A plain language reading of Rule 12(c) supports the timing of Canon's motion. And delaying the filing of a motion for judgment on the pleadings to June 4, 2021 would not promote judicial efficiency contemplated by the rule. Moreover, even if the Court granted the Rule 12(c) motion in full, it would still grant the plaintiff leave to amend his complaint at least once. Accordingly, Canon's motion was timely because the pleadings had closed for the purposes of a Rule 12(c) motion.

**B.    The Court may consider all of the materials attached to the pleadings.**

A Rule 12(c) motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6). *Gentilello*, 627 F.3d at 543–44. "In determining whether to grant a motion to dismiss, the district court must not go outside the pleadings and must accept all well-pleaded facts as true, viewing those facts most favorably to the plaintiff." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). Pleadings include a complaint and an answer to a complaint. Fed. R. Civ. P. 7(a). The Court may also consider documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

LeCroy contends that the Court may only consider the contents of its complaint at this stage and should ignore the materials attached to Canon's answer. Dkt. No. 24 at 8–9. Specifically, LeCroy challenges the consideration of the PowerPoint presentation that Canon represents as the alleged contract and several sales-compensation plans. Dkt. No. 24 at 9.

The Court may consider the attached materials for several reasons. First, a plain-language reading of the rule—that the Court is limited to the pleadings—suggests that the Court may consider all pleadings and their attachments. *See* Fed. R. Civ. P. 7(a). If the Court were limited to the plaintiff's complaint, then the rule would limit it to the complaint, and not all the pleadings.[4] Second, the Fifth Circuit's holding in *Collins* indicates that the Court may consider materials referenced by the plaintiff in the complaint and those that are essential to its claims. 224 F.3d at 498–99. Here, LeCroy references the attached PowerPoint presentation and the sales-compensation plans relied on by Canon.[5] Dkt. No. 6 at 14. These documents are essential to the claim because they weigh on the validity of the alleged contract and the intent of the parties.

While the Court considers these documents, it notes that, at this stage, all well-pled facts are accepted as true and viewed in the light most favorable to the plaintiff. As a result, any factual disputes that arise will be resolved in favor of the plaintiff and support a denial of the motion for judgment on the pleadings. *See Richardson*, 780 F.3d at 306.

### C. LeCroy adequately alleged a breach-of-contract claim.

Under Texas law, the essential elements of a breach-of-contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)

---

[4] "The expression of one thing implies the exclusion of others." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012).

[5] "Mr. LeCroy presented his Vertical Growth Plan by way of a detailed PowerPoint presentation that contained every element of the plan." Dkt. No. 6 at 14. After the alleged contract was formed, "Mr. Ikeda even explained to Mr. LeCroy in an email that his commission would be dealt with outside of his normal salary structure at Canon." *Id.*

(quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).

"What constitutes an enforceable contract is a question of law for the trial court." *Adams v. Mut. of Omaha Ins. Co.*, No. 3:13-CV-4881-D, 2015 WL 1378720, at *2 (citing *Gaede v. SK Ins. Inc.*, 38 S.W.3d 753, 757 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)). A valid and enforceable contract under Texas law requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) a communication that each party consented to the terms of the contract; (5) execution and delivery of the contract with an intent that it be mutual and binding on the parties; and (6) consideration." *Owens v. Specialized Loan Servicing, L.L.C.*, 694 F. App'x 950, 953 (5th Cir. 2017) (quoting *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).

Canon argues that LeCroy's breach-of-contract claim fails because LeCroy's sales-compensation plans contained an integration clause, which precludes any commission payments. Dkt. No. 15 at 9–10. Canon appears to equate LeCroy's alleged commission contract with the PowerPoint presentation. *Id.* at 10. Canon focuses its briefing on the presentation and contends that the PowerPoint lacks the essential elements of a contract. *Id.* 10–11. Canon specifically challenges the validity of the contract and whether LeCroy sustained damages from the alleged breach.

Conversely, LeCroy alleges a separate contract was formed as a result of his presentation, not the presentation itself. LeCroy also states that the PowerPoint attached to Canon's answer is not the actual file presented to Canon, but an earlier draft provided to the company. Dkt. No. 24 at 9. To rebut the integration clause of the compensation contract,

LeCroy alleges that he was told "in an email that his commission would be dealt with outside of his normal salary structure." Dkt. No. 6 at 14. Despite Canon's argument that the PowerPoint presentation does not satisfy the elements of a contract, LeCroy contends that the presentation itself is not the alleged contract. Dkt. No. 24 at 9. This alone raises a factual dispute making resolution of the claim inappropriate for a motion for judgment on the pleadings.

Canon also argues that, because the contract contained an integration clause, the parol-evidence rule would preclude the consideration of the alleged commission contract. Under Texas law, parol evidence generally prohibits admission of extrinsic evidence of a prior agreement or prior terms, not subsequent agreements that come after the integrated contract. *Jack H. Brown & Co., Inc. v. Toys "R" Us, Inc.*, 906 F.2d 169, 173 (5th Cir. 1990). Additionally, parol evidence does not preclude the consideration of a completely separate "side deal" when that deal is supported by evidence of separate consideration. *West v. Quintanilla*, 573 S.W.3d 237, 245 (Tex. 2019). Here, the alleged commission agreement arose after the sales contracts, which means that the integration clause and any parol-evidence argument would appear to fail under these facts.

As to contract damages, LeCroy provides sufficient factual allegations to demonstrate damages from the alleged breach. LeCroy alleges a specific commission percentage to which he was entitled under the alleged contract. Dkt. No. 6 at 14. Therefore, the Court may surmise what damages LeCroy seeks for the breach-of-contract claim. LeCroy does more than merely recite legal conclusions or implausible facts, but instead, provides an adequate factual basis for the damages claimed. Accordingly, the Court denies the motion for judgment on the pleadings.

D. **The economic-loss rule precludes LeCroy's fraud claim because it is premised on the alleged commission contract.**

Canon challenges LeCroy's fraud claim and argues that it is both barred by the economic-loss rule and that it is not sufficiently pled with particularity. Dkt. No. 15 at 12. The Court concludes that the fraud claim is barred by the economic-loss rule and, thus, need not reach the issue of whether the claim satisfies pleading standards.

In Texas, the economic loss rule "generally precludes a recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Galentine v. Tideport Distributing, Inc.*, 715 F. App'x 394, 395 (5th Cir. 2018) (quoting *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014)). But "a party [cannot] avoid tort liability to the world simply by entering into a contract with one party[; otherwise, the] economic loss rule [would] swallow all claims between contractual and commercial strangers." *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 419 (Tex. 2011). "Thus, a party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Chapman Custom Homes*, 445 S.W.3d at 718.

Here, LeCroy alleges fraud arising directly from the alleged commission contract. Dkt. No. 6 at 16. These allegations and the sought-after damages from the promised commission payments fall squarely within the economic-loss rule. LeCroy does not allege that Canon's fraudulent activity and its resulting damages are independent from his breach-of-contract claim. Nor does he allege a duty breached that is independent of the contractual undertaking. As a result, the Court dismisses LeCroy's fraud claim. Because the Court

dismisses the fraud claim based on the economic-loss rule, it need not reach whether the allegations satisfy Federal Rule of Civil Procedure 9(b).

### E. LeCroy adequately alleged a claim for promissory estoppel.

To establish a promissory-estoppel claim in Texas, a plaintiff must allege: (1) that the defendant made a promise; (2) that it was foreseeable that the plaintiff would rely on the promise; (3) substantial reliance by the plaintiff to his detriment; and (4) a definite finding that injustice can be avoided only by the enforcement of the promise. *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 864 (5th Cir. 1999). Canon contends that it did not make a sufficiently definite promise to support LeCroy's promissory-estoppel claim and that any claim would be precluded based on the existence of the sales-compensation contract. Dkt. No. 15 at 16. The Court finds that LeCroy adequately alleged a promissory-estoppel action.

In his complaint, LeCroy alleges that Kitajina accepted LeCroy's offer and that Ikeda emailed LeCroy stating that "his commission would be dealt with outside of his normal salary structure at Canon." Dkt. No. 6 at 14. This is sufficient to demonstrate a promise to pay LeCroy within the terms of the alleged contract and outside of his existing sales-compensation plan. LeCroy also provides a sufficient factual basis to allege that his reliance was foreseeable. LeCroy presented a new structure for the company that gave him certain responsibilities and commission payment. *Id.* The company then authorized him to act under the plan after promising him he would be paid in accordance with the plan. *Id.* Additionally, LeCroy did in fact begin to carry out the plan by hiring and overseeing three market specialists. *Id.* Finally, LeCroy alleges that he would not be properly compensated for his development and implementation of the plan without payment under the promise.

*Id.* at 14–15. As the Court must view all of the adequately alleged facts as true, the Court concludes that LeCroy has stated a claim for promissory estoppel.

### F. LeCroy adequately alleged a claim for quantum meruit.

Quantum meruit is an equitable theory of recovery which is based on an implied agreement to pay for benefits received, such as services or materials furnished. *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). If an express agreement governs a dispute, a plaintiff may not recover under quantum meruit. *See Villareal v. First Presidio Bank*, 744 F. App'x 204, 206 (5th Cir. 2018) (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000)). However, at the motion to dismiss stage, a quantum-meruit claim may be stated in the alternative to a breach of contract claim. *Pension Advisory Group, Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 704 n.5 (S.D. Tex. 2011) (concluding that quantum-meruit and unjust-enrichment claims under Texas law may be stated in the alternative to a breach-of-contract claim).

To recover under the doctrine of quantum meruit, a plaintiff must establish that:

> 1) valuable services were rendered or materials furnished; 2) for the person sought to be charged; 3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; [and] 4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff[,] in performing such services[,] was expecting to be paid by the person sought to be charged.

*Vortt*, 787 S.W.2d at 944; *accord Heldenfels Bros., Inc. v City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

Here, Canon argues that LeCroy's action for quantum meruit must fail because he also had a sales-compensation agreement. Dkt. No. 15 at 17. Conversely, LeCroy argues, and adequately pleads, that the alleged contract is outside the scope of the compensation

12

agreement. If he fails on his breach-of-contract claim at a later stage, Texas law still permits him to fall back on a claim for quantum meruit.

And LeCroy alleges each element of quantum meruit. LeCroy alleges he rendered valuable services by designing the plan and implementing it with the three market specialists as requested. Dkt. No. 6 at 14–15. Canon then accepted those services and benefited from the implementation of the plan, and LeCroy expected compensation based on both the express agreement and the nature of his commission in the plan. *Id.* Accordingly, the quantum-meruit claim survives the motion for judgment on the pleadings.

### G. The Court grants LeCroy's request to amend his complaint.

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave when justice so requires." And the Fifth Circuit has dictated strong policy favoring amendment of pleadings after dismissal. *Great Plains Tr.*, 313 F.3d at 329 ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). In fact, the Fifth Circuit has even held that a district court abuses its discretion if, after dismissal, it denies a timely motion to amend without justification, at least when the defendant would not be unduly prejudiced by the amendment. *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010).

In his response to Canon's motion for judgment on the pleadings, LeCroy requests leave to amend his complaint in the event that the Court grants the motion. Dkt. No. 24 at 19. After considering LeCroy's request and the strong policy favoring amendment of pleadings after dismissal, the Court grants LeCroy leave to amend his complaint. LeCroy

may therefore file one amended complaint no later than 21 days from the issuance of the Court's order. Any amended complaint shall address the pleading deficiencies identified in the Court's order.

4. **Conclusion**

For the reasons stated above, the Court grants Canon's motion for judgment on the pleadings in part and denies it in part. If LeCroy wishes to amend his complaint to replead his claim for fraud in compliance with this Order, he must do so no later than June 30, 2021.

So ordered on June 8, 2021.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE